UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re:                                                )<br>                                                         )<br>SARAH C. EVANS,                        )<br>                                                         )<br>                                                         )<br>               Debtor.                          )<br>                                                         )<br>UNITED STATES OF AMERICA on behalf of )<br>the SOCIAL SECURITY ADMINISTRATION, )<br>                                                         )<br>               Plaintiff,                        )<br>                                                         )<br>     -v-                                              )<br>                                                         )<br>SARAH C. EVANS,                        )<br>                                                         )<br>                                                         )<br>               Defendant.                    ) | Case No. 16-46322-705<br>Chief Judge Kathy A. Surratt-States<br>Chapter 7<br><br>**Adversary No. 16-4166-659**<br><br>**PUBLISHED** |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The matter before the Court is Plaintiff's Motion for Summary Judgment with Supporting Facts, Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment along with Declaration of Austin McDowell with exhibits, Defendant's Response to Motion for Summary Judgment and Plaintiff's Reply to Debtor/Defendant's Response to Plaintiff's Motion for Summary Judgment.  The matter was taken under submission.  Upon consideration of the record as a whole, the Court issues the following **FINDINGS OF FACT:**

The facts are not in dispute.  On August 31, 2016, Debtor Sarah C. Evans (hereinafter "Debtor") filed her Voluntary Petition for relief under Chapter 7 of the Bankruptcy Code. Plaintiff's Motion for Summary Judgment with Supporting Facts (hereinafter "Plaintiff's Statement of Facts"), ¶ 1.  In Schedule E/F Debtor listed a debt owed to the Social Security Administration (hereinafter "SSA") in the amount of $39,988.30.   Debtor's actual current overpayment debt is $35,567.69. Plaintiff's Statement of Facts, ¶ 2.  On July 25, 2007, Debtor filed an application for Disability Insurance Benefits (hereinafter "DIB") with the SSA.  Plaintiff's Statement of Facts, ¶ 2.  The DIB

program provides for the payment of benefits to an "insured" individual who has contributed to the Social Security trust fund through the Social Security tax on her earnings. Plaintiff's Statement of Facts, ¶ 3. The benefits are made payable to individuals who prove through medical and other evidence that they are "disabled," as defined by the Social Security Act, or unable to engage in any substantial gainful activity, by reason of medically determinable physical or mental impairment expected to result in death or which has lasted or can be expected to last, for a continuous period of at least 12 months. Plaintiff's Statement of Facts, ¶ 3. By filing a DIB application, Debtor agreed to a number of reporting responsibilities including notifying the SSA if Debtor returned to work as either an employee or self-employed person. Plaintiff's Statement of Facts, ¶ 4. During the interview process that occurs in connection with an application for DIB, the SSA's employee performing the interview explains the claimant's reporting responsibilities, including the duty to report any return to work in order to avoid a benefits overpayment. Plaintiff's Statement of Facts, ¶ 4. In Debtor's application summary, Debtor acknowledged that she agreed "to notify [agency] of all events explained to me." Plaintiff's Statement of Facts, ¶ 4. Currently, the SSA has more than 60,000,000 total beneficiaries, and had anywhere from approximately 50,000,000 to 58,000,000 total beneficiaries between 2007 and 2013 of which 9,000,000 to 11,000,000 received DIB. Plaintiff's Statement of Facts, ¶ 4. For this reason, all disability beneficiaries are responsible for self-reporting their work activity to the SSA immediately and continue to be responsible for reporting their work activity immediately. Plaintiff's Statement of Facts, ¶ 4.

  On November 11, 2007, the SSA notified Debtor that she was entitled to monthly disability benefits beginning June 2007. Plaintiff's Statement of Facts, ¶ 5. In its notice, dated November 11, 2007, the SSA informed Debtor that the decision to grant Debtor benefits was based on the information Debtor provided to the SSA and if this information changed, it could affect Debtor's benefits. Plaintiff's Statement of Facts, ¶ 5. The SSA's notice referred Debtor to an attached pamphlet described Debtor's duty to report information that might affect her benefits, including a

need to inform the SSA if she started a job or became self-employed "no matter how little [she] earn[ed]." Plaintiff's Statement of Facts, ¶ 5. The SSA's notice also warned Debtor that it was important to report to the SSA "right away" any changes that could affect her benefits eligibility. Plaintiff's Statement of Facts, ¶ 5. Shortly thereafter, the SSA began to pay DIB to Debtor. Plaintiff's Statement of Facts, ¶ 5.

In April 2011, the SSA contacted Debtor for information about any work she had done since she filed her application for DIB. Plaintiff's Statement of Facts, ¶ 6. The SSA contacted her because, for some beneficiaries, the SSA may review their cases from time to time to see if they remain eligible for benefits based on their medical condition. Plaintiff's Statement of Facts, ¶ 6. The SSA may also review information it receives from the Internal Revenue Service to see if any wages are appearing on the beneficiary's Social Security record. Plaintiff's Statement of Facts, ¶ 6. In this instance, earnings were appearing on Debtor's Social Security record. Plaintiff's Statement of Facts, ¶ 6.

On June 6, 2011, in a Work Activity Report, Debtor stated that she worked for CVS Pharmacy from July 2010 through May 2011 as a customer service representative in the photo lab and as a cashier. Plaintiff's Statement of Facts, ¶ 7. During this time Debtor did not report her work for CVS Pharmacy to the SSA prior to the SSA contacting her about her case in 2011. Plaintiff's Statement of Facts, ¶ 7.

Debtor also worked as a cashier at a Home Depot store in 2009. Plaintiff's Statement of Facts, ¶ 8. Debtor also worked at Boscov's Department Store from about June 2009 to July 2010 in the home furnishings department and as a cashier. Plaintiff's Statement of Facts, ¶ 8. Debtor also worked at Claire's Boutiques in 2009 as a cashier. Plaintiff's Statement of Facts, ¶ 8. Debtor worked as a manager for Hat World, a store at a shopping mall, in 2009. Plaintiff's Statement of Facts, ¶ 8. Debtor also worked for Verizon Wireless in 2007 and 2008. Plaintiff's Statement of

Facts, ¶ 8. Debtor did not tell the SSA that she was working at any of these jobs at any time prior to the SSA contacting her about her work activity in 2011. Plaintiff's Statement of Facts, ¶ 8.

On June 6, 2011, the same day Debtor completed her Work Activity Report referred to above, Debtor started working at Sallie Mae as a customer service representative at a call center. Plaintiff's Statement of Facts, ¶ 9. Debtor's work at Sallie Mae required discussing student loans with clients. Plaintiff's Statement of Facts, ¶ 9. Debtor did not report her work at Sallie Mae to the SSA until the SSA contacted Debtor about her case in 2013 and informed Debtor that earnings were showing up on Debtor's Social Security Record. Plaintiff's Statement of Facts, ¶ 9. Debtor worked at Sallie Mae from June 2011 through February 2012. Plaintiff's Statement of Facts, ¶ 9. During or shortly after the time Debtor worked at Sallie Mae, Debtor also completed on-line college coursework and earned a medical assistant certificate. Plaintiff's Statement of Facts, ¶ 9.

In October of 2011, Debtor telephoned the SSA to report that she changed addresses. Plaintiff's Statement of Facts, ¶ 10. Debtor did not use this opportunity to report Debtor's work activity that Debtor had performed since she stated receiving DIB, including the work at Sallie Mae Debtor was performing at the same time. Plaintiff's Statement of Facts, ¶ 10.

On December 3, 2011, the SSA sent Debtor a notice informing Debtor that because of her work activity she completed her nine-month "trial work period." Plaintiff's Statement of Facts, ¶ 11. The trial work period is a nine-month period during which a DIB beneficiary may test her ability to work. Plaintiff's Statement of Facts, ¶ 11. It allows the beneficiary to earn an unlimited amount of money during those nine months while remaining eligible to receive DIB. Plaintiff's Statement of Facts, ¶ 11. If the beneficiary's work activity exceeds a certain amount in the tenth month, the beneficiary is deemed capable of performing substantial gainful activity, benefits will be suspended, and can potentially be terminated. Plaintiff's Statement of Facts, ¶ 11. Debtor's trial work period ended in August 2008. Plaintiff's Statement of Facts, ¶ 11.


In its December 3, 2011 notice, the SSA also informed Debtor that because of Debtor's work activity, Debtor had not been eligible to receive DIB in December 2008, June 2009 through July 2009, December 2009, October 2010 and December 2010. Plaintiff's Statement of Facts, ¶ 12. The notice also informed Debtor that she had received $9,134.30 too much in DIB due to Debtor's work activity and that Debtor should repay the money. Plaintiff's Statement of Facts, ¶ 12. Furthermore, the notice also reminded Debtor of her responsibility to inform the SSA "right away" if Debtor returned to work or if Debtor's job duties or pay changed. Plaintiff's Statement of Facts, ¶ 12. The SSA's notice also reminded Debtor that if Debtor failed to properly report such information to the SSA, Debtor might be overpaid again and have to repay any benefits Debtor was not due. Plaintiff's Statement of Facts, ¶ 12.

The SSA's December 3, 2011 notice also advised Debtor that Debtor had been entitled to DIB from January 2009 through May 2009, August 2009 through November 2009, January 2010 through September 2010, and in November 2010, because Debtor had not performed substantial work during those months. Plaintiff's Statement of Facts, ¶ 13. At the time the SSA issued this notice the SSA was unaware that Debtor was working for Sallie Mae. Plaintiff's Statement of Facts, ¶ 13. Therefore, the notice also informed Debtor that Debtor remained eligible for DIB from January 2011 and thereafter because the information available to the SSA at the time indicated that Debtor was no longer performing substantial work. Plaintiff's Statement of Facts, ¶ 13.

After Debtor's overpayment was assessed, the SSA began partially withholding Debtor's DIB in order to recover for Debtor's overpayment. Plaintiff's Statement of Facts, ¶ 14. After the SSA began partially withholding Debtor's benefits, Debtor called the SSA's toll-free number and an SSA representative explained the cause of Debtor's overpayment. Plaintiff's Statement of Facts, ¶ 14.

Debtor worked for Sallie Mae from June 2011 through February 2012. Plaintiff's Statement of Facts, ¶ 15. Debtor did not report any of this work activity until March 2013, after the SSA

contacted Debtor regarding Debtor's case.  Plaintiff's Statement of Facts, ¶ 15.  On August 11, 2013, the SSA sent Debtor a notice informing Debtor that, due to Debtor's work activity, Debtor's eligibility for benefits had ceased in December 2011.  Plaintiff's Statement of Facts, ¶ 15.  Because of Debtor's previously unreported work activity, Debtor had been overpaid $39,988.30, which represented the remaining balance of Debtor's first overpayment combined with the overpayment Debtor accrued as a result of Debtor's work activity from December 2011 and thereafter.  Plaintiff's Statement of Facts, ¶ 15.

On August 31, 2016, Debtor filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code and listed the overpayment debt in her schedules.  Plaintiff's Statement of Facts, ¶ 16.  The United States of America, on behalf of its agency, the SSA (hereinafter "Plaintiff") filed this Adversary Proceeding on November 28, 2016, seeking determination of the disachargeability of the overpayment debt.  Plaintiff brings this Motion for Summary Judgment stating there is no genuine issue of material fact and as a matter of law Plaintiff is entitled to the relief requested; thus this Court should grant its motion for summary judgment and determine that the overpayment debt is nondischargeable.  Debtor admits that the facts are not in dispute and argues that the issue in this case is whether Debtor deliberately and knowingly made false representations to the SSA over several years that the overpayment occurred.  Debtor also argues that she did not have the mental ability to make such a decision to commit such acts or to fulfill the requirements to the SSA due to diagnosis of several mental disorders, being under the care of several physicians, taking multiple medications and having been hospitalized several times due to mental instability.   Debtor also argues that she tried to commit suicide three times and was in an abusive relationship, which raises questions about Debtor's mental capacity to consider her obligations to the SSA.

**JURISDICTION**

This Court has jurisdiction over the parties and subject matter of this proceeding under 28 U.S.C. §§ 151, 157, and 1334 (2016) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) (2016). Venue is proper in this District under 28 U.S.C. §1409(a) (2016).

**CONCLUSIONS OF LAW**

A motion for summary judgment proceeds under Rule 56 of the Federal Rules of Civil Procedure, made applicable in Bankruptcy proceedings by Rule 7056. *In re Gardner*, 220 B.R. 63, 64 (Bankr. E.D. Mo. 1998). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and the affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *In re Allen*, 520 B.R. 281 (Bankr. E.D. Mo 2014) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)). The movant has the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Id.* A genuine issue exists if the record taken as a whole would lead a rational trier of facts to find for the nonmovant. *Id.* (citing *Ricci v. DeStefano*, 557 U.S. 557, 586, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009)). Once the movant satisfies that burden, the burden shifts to the nonmovant. Id. For the nonmovant to satisfy its burden it must do more than simply show some metaphysical doubt exists as to the material facts; the nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (citing *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). A court must view all facts in a light most favorable to the nonmovant, and the nonmovant must receive the benefit of all reasonable inferences drawn from the facts. *Bank of America, N.A. v. Armstrong (In re Armstrong)*, 498 B.R. 229, 233 (B.A.P. 8th Cir. 2013) (citing *Williams v. Marlar (In re Marlar)*, 252 B.R. 743, 750 (B.A.P. 8th Cir. 2000).

Here, Plaintiff met the burden of proof as required by filing Plaintiff's Motion for Summary

Judgment with Supporting Facts, Plaintiff's Memorandum of Law in Support of its Motion for Summary Judgment along with Declaration of Austin McDowell with exhibits. Debtor filed Defendant's Response to Motion for Summary Judgment but did not raise any issues of material fact. The remaining issue to be determined by the Court is whether the evidence, when presented in a light most favorable to Debtor, entitles Plaintiff to judgment as a matter of law.

Under section 523(a)(2)(A), a debtor cannot obtain a discharge from any debt "for money, property, services . . . to the extent obtained by – false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. Section 523(a)(2)(A) (2016). Exceptions to discharge under § 523(a) are to be strictly and narrowly construed against the creditor and liberally in favor of the debtor to facilitate the debtor's fresh start. *In re Sulier*, 541 B.R. 867, 877 (Bankr. D. Minn. 2015) (citing *In re Thompson*, 686 F.3d 940, 944 (8th Cir. 2012) (citations omitted)). Section 523(a)(2)(A) provides "three distinct, but often intermingled, bas[e]s for nondischargeability: false pretenses, a false representation or actual fraud." *In re C.R. Fields*, III, 544 B.R. 156, 172 (Bankr. E.D. Ark. 2016) (citation omitted).

To prevail under section 523(a)(2)(A), a creditor must prove the following elements by a preponderance of the evidence:

>   1. The debtor made a representation.
>   2. The debtor knew the representation was false at the time it was made.
>   3. The representation was deliberately made for the purpose of deceiving the creditor.
>   4. The creditor justifiably relied on the representation.
>   5. The creditor sustained the alleged loss as the proximate result of the representation having been made.

*In re Days*, 540 B.R. 423, 428 (Bankr. E.D. Mo. 2015) (citing *In re Maurer*, 256 B.R. 495, 500 (B.A.P. 8th Cir. 2000); *Grogan v. Garner*, 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

A direct misrepresentation includes oral or written assertions and any other conduct that amounts to an assertion not in accordance with the truth. *In re Sulier*, 541 B.R. 867, 878 (Bankr. D. Minn. 2015) (quoting *In re Moen*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)). "A representation that is made 'under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth' satisfies the knowledge requirement." *In re Sulier*, 541 B.R. at 879 (quoting *In re Moen*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)). Further, "[i]n assessing a debtor's knowledge of the falsity of the representation . . ., the Court must consider the knowledge or experience of the debtor." *In re Moen*, 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999) (quoting *In re Duggan*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994)). "The intent element of § 523(a)(2)(A) does not require a finding of malevolence or personal ill-will; all it requires is a showing of an intent to induce the creditor to rely and act on the misrepresentations in question." *In re Swan*, 156 B.R. 618, 623 n. 6 (Bankr.D.Minn.1993) (citing *In re Hunter*, 771 F.2d 1126, 1129 (8th Cir.1985)). "Whether a creditor justifiably relies on a representation depends on the 'qualities and characteristics of the particular [creditor], and the circumstances of the particular case.'" *In re Days*, 540 B.R. 423, 429 (Bankr. E.D. Mo. 2015) (quoting *Field v. Mans*, 516 U.S. 59, 71, 116 S.Ct. 437, 444, 133 L.Ed.2d 351 (1995)).

The first and second element under section 523(a)(2)(A) is whether Debtor made a representation and that the representation was false when made. Debtor applied for DIB on July 25, 2007 and began receiving benefits in November 2007. In Debtor's application for DIB, Debtor made written assertions attesting that Debtor was disabled, as defined by the Social Security Act, or unable to engage in any substantial gainful activity, and thus entitled to disability benefits. Further, as a part of the DIB application process, Debtor participated in an interview where Debtor orally represented her inability to work and her disability status. Debtor was aware that the SSA's decision to award Debtor disability benefits was based on Debtor's representations in her application and interview, and an ongoing requirement to report any changes in her work status or

information relevant to her benefits application.  Here, Debtor contends that she did not know her representations were false at the time they were made.  Debtor states to the Court that Debtor suffered from mental disorders during the time Debtor received benefits.  It is Debtor's contention that she did not have the mental capacity to know her representations were false at the time Debtor made them.  Even if the Court were to take Debtor's health into consideration, Debtor only made statements and did not produce any evidence.  Through her conduct Debtor demonstrated a reckless disregard by failing to accurately report her employment status.  Debtor knew that her benefit award was based on the accuracy of Debtor reporting and any omission would constitute a misrepresentation.  This information was made clear in the initial 2007 notice of benefits award and pamphlet that stated that Debtor must inform the SSA if she started a job or became self-employed "no matter how little [she] earn[ed]".  Further, Debtor knew that she needed to update her address yet did not advise the SSA during the call that her work status had changed. The Court finds Debtor's actions to be contradictory to her contention that she did not have the mental capacity to update the SSA with her work status.  Therefore, the Court finds element one and two are satisfied.

The third element that must be proven is whether Debtor's representation was made for the purpose of deceiving the SSA.  Debtor argues that she was hospitalized due to suicide attempts and mental problems and was not in the right state of mind to deceive the SSA. Debtor argues that Debtor did not intend to deceive the SSA the entire five years that she received benefits.  Plaintiff argues that Debtor manifested the requisite intent to deceive when Debtor failed to report her work activity and continued to receive benefits for which Debtor was not entitled.  Plaintiff argues Debtor knew that she was required to report any changes if they were to occur during the time she received DIB.  In opposition, Debtor again contends that she was mentally unstable during the period for which she received DIB and did not have the requisite intent to deceive the SSA. To the contrary, Plaintiff argues that Debtor was reminded of her reporting duties throughout the years she

received benefits. Further, Plaintiff argues that during this time Debtor worked at various jobs, completing on-line college level coursework and earned a medical assistant certificate. This Court does not agree with Debtor's argument that Debtor's alleged mental problems had negative implications on Debtor's ability to accurately report her work status. The Court finds that Debtor's conduct, through Debtor's omissions, demonstrated intent to deceive the SSA into providing benefits for which Debtor was not entitled. If Debtor truly intended not to deceive the SSA, Debtor would have notified the SSA of changes in her work status and abided by the reporting requirements necessary to receive benefits under the program, just as she contacted the SSA for other issues regarding her DIB. Thus, element three is satisfied.

The fourth element is whether the SSA reasonably relied on Debtor's representation. Here, Debtor made representations both orally and written to the SSA in regards to her work status. The SSA relied on Debtor's representations as to her work status and disability to determine the benefits Debtor would receive. Debtor did not report the changes in her work status throughout the five years that she was in the program. Even so, the SSA was not required to investigate her work status unless there were warning signals that would indicate that Debtor was deceiving the SSA. It is clear that the SSA relies on benefit program participants to self-report to maintain the accuracy of its records and avoid overpayment. The Court agrees with Plaintiff's argument that it would be burdensome for the SSA to investigate the millions of benefit recipients who participate in the program. The Court finds that it was reasonable for the SSA to rely on Debtor's representations and thus, element four is satisfied.

The fifth element is whether the SSA sustained an actual loss. Here, the SSA paid benefits in excess of $35,567.69 due to Debtor's false representation of her work status. Debtor does not dispute that she owes this amount in overpayment due to her failure to accurately report her work status. This Court agrees that the SSA would not have sustained such a monetary loss but for Debtor's misrepresentations. Thus, the Court finds that element five is satisfied.

Therefore, Plaintiff is entitled to judgment as a matter of law. By separate Order, Plaintiff's Motion for Summary Judgment will be granted and the debt owed by Debtor to the SSA in the amount of $35,567.69 will be excepted from discharge.

*Kathy A. Surratt-States*

KATHY A. SURRATT-STATES
Chief United States Bankruptcy Judge

DATED: March 12, 2018
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO 63102

Tobias Licker
Law Offices of Tobias Licker LLC
1861 Sherman Dr.
St. Charles, MO 63303

Jane Rund
U.S. Attorney's Office
111 South Tenth Street
St. Louis, MO 63102

Sarah C Evans
1721 S. 5th Street - Apt 2N
Saint Charles, MO 63303